Randall E. ROLLINS, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

No. CV 93–1188(JG).

United States District Court,
C.D. California.

July 1, 1994.

Clara Weiner Dworsky, Houston, TX, for Plaintiff.

Leon W. Weidman, Russell W. Chittenden, Terree A. Bowers, Asst. U.S. Atty., Civil Div., Los Angeles, CA, for Defendant.

## ORDER

GROH, United States Magistrate Judge.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the Secretary's denial of disability insurance benefits. Defendant has answered, and the parties have filed cross motions for summary judgment. For the reasons discussed below, the Secretary's decision is affirmed and the complaint is dismissed.

## BACKGROUND

On March 13, 1990, plaintiff applied for disability insurance benefits, claiming that he had been disabled since November 12, 1986, due to a combination of physical and mental impairments, including severe depression. (Administrative Record, A.R., 116.) After his application was denied, he filed a request for reconsideration and advised the Social Security Administration that he had actually become disabled on January 9, 1986. (A.R. 125, 167.) When his request for reconsideration was denied, plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ) and again revised the onset date of his disability, this time stating that it began in December, 1982 or January, 1983. (A.R.129.)

The ALJ determined that plaintiff was still performing "substantial gainful activity," and was therefore "not disabled" at step one of the evaluation process,[1] as of December 31, 1985—the date when his insured status ex-

pired. The Appeals Council denied plaintiff's request for review on December 24, 1992.

## RELEVANT RECORD EVIDENCE

Plaintiff was born August 30, 1949. He graduated from dental school, and conducted a private dentistry practice in Texas from 1974 until the summer of 1986. His net income was $27,900 in 1981, but thereafter the gross receipts from his practice never exceeded his expenses. (A.R.55–57, 133.)

Plaintiff has suffered from depression for his entire life, but in 1982 his illness became more serious, leading to a gradual decline of his practice. He began working fewer days, cancelled appointments and alienated patients. In 1985, he started working for another dentist, hoping that he would be more successful in a situation that might be less stressful. After two months, however, plaintiff's employment was terminated, because his employer was dissatisfied with his work habits. (A.R.17, 23.) Plaintiff then returned to his own practice, which he maintained until the summer of 1986, when he allowed his license to expire. (A.R.23, 54, 79.)

Sometime later in 1986, plaintiff moved to California where he occasionally worked as a substitute teacher until June, 1989. His income during this period varied from $490.00 to $3219.50 per year. (A.R.317–18.) He has not worked at all since 1989.

Although plaintiff has never been hospitalized for his depression, he has been examined and treated by several mental health professionals. He also has been treated for a heart ailment.[2] The Secretary determined that plaintiff was disabled by reason of these impairments as of June 1, 1989, and he therefore qualified for *Medicare* benefits as of that date. However, plaintiff was found to be not

---

**1.** The regulations prescribe a five-step, sequential procedure. 20 C.F.R. § 404.1520. Briefly summarized, to determine disability,

the following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe'? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3

and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984). *See also Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991).

**2.** A more complete summary of the medical evidence is not required, as the ALJ decision under review was based solely on nonmedical grounds.

disabled as of December 31, 1985, when his insured status expired for purposes of *disability* benefits. It is this determination that plaintiff challenges here.

### DISCUSSION

 Under 42 U.S.C. § 405(g), the Secretary's decision is subject to review to determine whether: (1) the findings are supported by substantial evidence and (2) the Secretary applied the proper legal standards. *Swanson v. Secretary of Health & Human Services,* 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is 'more than mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.,* citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Secretary of Health and Human Services,* 726 F.2d 1470, 1473 (9th Cir.1984).

 The claimant has the initial burden of proving that he is disabled within the meaning of the Social Security Act. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir. 1986). The burden of proof on the issue of disability switches to the Secretary only if step five of the sequential evaluation is reached. *Quang Van Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir.1989). A disability benefits claimant must establish that he became disabled at some time prior to the expiration of his insured status. *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir.1988).

In the instant case, the Secretary found that plaintiff's insured status expired on December 31, 1985, and plaintiff does not dispute that determination. Thus, plaintiff was required to prove that he was disabled,

within the meaning of the Social Security Act, as of that date.[3] The ALJ determined, however, that plaintiff was not disabled as of December 31, 1985, because he was still engaged in substantial gainful activity. Plaintiff contends that the ALJ's decision should be set aside because (1) the ALJ did not follow the applicable rules of law, and (2) his findings are not supported by substantial evidence. For the reasons discussed below, I find these arguments to be without merit.

### 1. *The ALJ Did Not Commit Legal Error.*

 Plaintiff initially contends that the ALJ erred by failing to adequately consider his mental impairment. This argument would require closer attention if the sequential evaluation of plaintiff's disability claim had proceeded beyond step one. However, because the ALJ did in fact decide this case at step one, he was not required specifically to evaluate plaintiff's physical or mental impairments.

The regulation defining step one, 20 C.F.R. § 404.1520(b), could not be more clear on this point. It apprises claimants that:

> If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled *regardless of your medical condition* or your age education, and work experience.

(Emphasis added.) In other words, once the ALJ determined that plaintiff was engaged in substantial gainful activity as of December 31, 1985, he properly concluded that plaintiff was "not disabled" for social security purposes. There was no need for any further assessment of plaintiff's medical condition.[4]

---

**3.** Defendant contends that plaintiff must prove not only that he was disabled as of December 31, 1985, but also that he was *continuously* disabled from that date until twelve months prior to the filing of his application for benefits. (See Defendant's Memorandum In Support of Motion For Summary Judgment, p. 3, citing *Arnone v. Bowen,* 882 F.2d 34, 38 (2d Cir.1989); *Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir.1988).) It is unnecessary to consider this secondary requirement, however, as I have concluded (for the reasons discussed below) that the ALJ properly

found that plaintiff was not disabled as of the expiration of his insured status. Accordingly, there is no need to consider whether plaintiff's employment as a substitute teacher from 1986 to 1989 constituted substantial gainful employment.

**4.** Plaintiff's reliance on *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986) is misplaced, as it was not a step one case. Rather, the Court only considered how the claimant's mental impairment might affect his *future* employability.

### 2. *The ALJ's Determination That Plaintiff Was Engage In Substantial Gainful Activity Is Supported By Substantial Evidence.*

The ALJ found that plaintiff's work as a dentist, between January 1, 1983, (the claimed onset date of his disability), and December 31, 1985, (the date when his insured status expired), "constitute[d] substantial gainful activity within the meaning of the regulations." (A.R.39.) Plaintiff contends that this finding is not supported by substantial evidence.

The applicable regulation states that—

Substantial gainful activity is work activity that is both substantial and gainful:

(a) *Substantial work activity.* Substantial work activity is work activity that involves doing significant physical or mental activities. *Your work may be substantial even if it is done on a part-time basis* or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity.* Gainful work activity is work activity that you do for pay or profit Work activity is gainful if it is the kind of work usually done for pay or profit, *whether or not a profit is realized.*

20 C.F.R. § 404.1572 (emphasis added). There can be little doubt that plaintiff's work as a dentist involved significant physical and mental activity. This is evident from plaintiff's own description of his job:

I used to be a dentist *until August 1986*—I made crowns + bridges + dentures + fillings + did oral surgery, cleaned teeth, treated people for gum disease, etc. I used equipment like x-ray machines, dental high-speed drills, lathes, autoclaves, nitrous-oxide equip., gave injections, prescribed drugs, used surgical hand instruments, filled-out insurance + other medical reports. I used to supervise 3–4 people in my office.

(A.R. 151; emphasis added.) It difficult to imagine a job description involving a higher level of combined physical and mental activities.

Although plaintiff testified that "[t]owards the end I was cutting out a lot of days, and I'd work 2 days a week," (A.R.55), this does not undermine the ALJ's finding. The regulations clearly indicate that part-time work can be substantial activity. 20 C.F.R. § 404.1572(a).

Plaintiff also testified that he lost patients due to the effects of his mental illness. (A.R.55.) In addition, after the ALJ had rendered his decision, plaintiff submitted new evidence to the Appeals Council, consisting of (i) a letter from a doctor who treated plaintiff for depression in 1983, (ii) a letter from the dentist who employed plaintiff during the summer of 1985, and (iii) plaintiff's own affidavit, (apparently a supplement to his testimony). (A.R.17, 18, 23.) While this evidence shows that plaintiff had a problem that affected his practice, the fact remains that *plaintiff continued to operate his practice until the summer of 1986.* Thus, there is ample evidence supporting the ALJ's determination that plaintiff was still engaged in "substantial activity" when his insured status expired in December, 1985.[5]

There is also ample evidence supporting the ALJ's finding that plaintiff's dental practice constituted "gainful activity" through 1985, even though plaintiff did not report any taxable income after 1981. Again, the applicable regulation is clear—"[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). While plaintiff did not actually earn a profit during the final years of his dental practice, it is evident that dentistry is "the kind of work usually done for pay or profit," and that plaintiff continued his practice with the hope of making a living at it. There is certainly no indication that he kept his office open for

5. It is noteworthy that plaintiff stated on his initial benefits application form that he did not become disabled until November, 1986—*after* he had closed down his dental practice entirely. He subsequently revised his disability onset date to January, 1986, and later back to 1983. A three

year error in the date of the onset of one's own disability is improbable in itself, and it is difficult to avoid the inference that the backward revisions were somehow related to plaintiff's discovery that his insured status expired in December, 1985.

personal pleasure or recreational purposes, or as a hobby or public service project.

The regulations further indicate that self-employed claimants are considered to have engaged in substantial gainful activities if—

[the claimant's] work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work [the claimant is] doing. . . .

20 C.F.R. § 404.1575(a)(2). Thus, even though plaintiff's dentistry skills may have been impaired prior to December 31, 1985, his practice still constituted substantial gainful activity if the value of his work exceeded the level specified at § 404.1574(b)(2), i.e., $300.00 per month. Plaintiff testified that after 1981, the gross receipts from his practice were approximately $4000.00 per month. (A.R.57.) While this amount of receipts did not yield any net income for him after expenses (*id.*), it certainly indicates that his dental services had a significant value, and it amply supports the ALJ's determination that "[h]is services to the business, when compared to the salary he would receive if he were an employee doing the same type of work, were worth more than $300.00. per month." (A.R.38.)

In sum, there is substantial evidence supporting the ALJ's determination that plaintiff was engaged in substantial gainful activity as of the date when his insured status expired. Accordingly, I find no error in the ALJ's conclusion, reached at step one of the sequential evaluation, that plaintiff was "not disabled." The Secretary's motion for summary judgment is therefore granted, and the complaint is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.