Carl G. DIERKS, SSN: 504–46–5934, Plaintiff,

v.

Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.

No. 4:98CV3093.

United States District Court, D. Nebraska.

Sept. 16, 1999.

Catherine R. Enyeart, Enyeart Law Office, Hot Springs, SD, for Plaintiff.

Paul D. Boeshart, Assistant United States Attorney, Lincoln, NE, for Defendant.

### MEMORANDUM AND ORDER

KOPF, District Judge.

This is a social security appeal filed by Carl Dierks ("Dierks") pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Dierks' claim for disability benefits under Title II because Dierks was not under a "disability," as defined in the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Dierks argues on appeal that the

Administrative Law Judge ("ALJ") failed to apply the proper legal standards for deciding whether Dierks' home business activity during the first five months of disability amounted to "substantial gainful activity," and whether Dierks was entitled to a trial work period. For the reasons that follow, I shall affirm the decision of the Commissioner.

## I. BACKGROUND

### A. Procedural History

Dierks filed an application for Title II disability benefits on January 30, 1995. (Tr. 93–95.) The Regional Commissioner of the Social Security Administration denied Dierks' application initially (Tr. 96–98) and on reconsideration (Tr. 101–102). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ concluded that Dierks was not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223 of the Social Security Act (Tr. 10–23). Because the Appeals Council of the Social Security Administration denied Dierks' request for review, the ALJ's decision stands as the final decision of the Commissioner (Tr. 3–4.)

### B. ALJ's Findings

On October 17, 1996, the ALJ found that Dierks, who claims to have been disabled since August 1, 1994, has worked as an engineering consultant and owner/operator of a manufacturing company since August 1, 1994, 20 C.F.R. § 404.1574; Dierks' work activity involves significant physical or mental activities for pay or profit, 20 C.F.R. § 404.1573; Dierks' work activity constitutes substantial gainful activity within the meaning of the social security regulations, 20 C.F.R. § 404.1572; Dierks has not been unable to engage in substantial gainful activity for any continuous period of at least 12 months; and Dierks was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision, 20 C.F.R. § 404.1520(b). (Tr. 22.)

The ALJ also found that Dierks was not entitled to a "trial work period" because "there has been no period of twelve consecutive months wherein the claimant has been unable to engage in substantial gainful activity, there is no starting point which serves as a commencement point for a trial work period." (Tr. 21.) The ALJ also noted that while some courts have allowed trial work periods to commence during the period in which a claimant waits for a determination regarding whether he or she is entitled to disability insurance benefits, the Eighth Circuit Court of Appeals has not adopted such a rule. (Tr. 21.)

### C. Facts

Dierks applied for benefits on January 30, 1995, alleging a disability-onset date of August 1, 1994, due to cardiac problems, depression, anxiety and sleep disorders, pulmonary problems, back pain, hypertension, and obesity. Dierks' alleged disability-onset date, August 1, 1994, is the same date he quit his job as city manager and city engineer for Chadron, Nebraska. (Tr. 93–95, 111, 115, 127.) Dierks is a registered professional engineer who, as city manager for 15 years, supervised 50 employees and managed a $4 million annual budget. (Tr. 115.)

From August 1994 until the time of the hearing before the ALJ on June 13, 1996, Dierks operated an engineering consulting business from his home, doing engineering work related to streets, sewers, water mains, and buildings. (Tr. 42.) He charged $40.00 per hour for his services, and had the City of Chadron as his major client, as well as "private . . . people in the community." (Tr. 41.) Dierks testified that he works "a few hours a day" (Tr. 48), but a VAMC medical progress note dated January 26, 1996, indicates that, at that time, Dierks was spending "long hours on computer work." (Tr. 343.)

Dierks also testified that until March 1996, he was a commissioner of the Nebraska Interlocal Government Lottery Commission who received $1,600 annually

for attending quarterly meetings and doing associated preparation, totaling approximately 50 hours per year. (Tr. 42–44.) The administrative record also establishes that Dierks owned and operated a steel products company named Westlands Manufacturing from 1994 until the time of the administrative hearing, and that Dierks worked 70 hours for his company in 1995. (Tr. 48–51, 107, 437.) The ALJ accurately described this venture:

> [Dierks] is trying to market an invention which he has not yet patented. At present, another individual produces the product and the claimant buys them from him, therefore the cost of goods is extremely close to the gross sales. The claimant is leasing a building which he hopes can be used for manufacturing these devices in the future. He is marketing these devices to certain communities and most of his effort thus far has been in direct mailing. As to the amount of work involved, he has done three direct mailings which have involved about fifteen or twenty hours each for the year. Processing orders, thus far, has entailed about ten hours over the course of a year.

(Tr. 15.)

Dierks' 1994 tax records indicate that he had $10,788 in gross income from his manufacturing company in that year, but had a net loss of $1,106 after subtracting expenses, such as $3,988 in depreciation, $1,806 in repairs and maintenance, and $1,864 in supplies. (Tr. 437.) Dierks' 1994 income and expense statement reported earnings of $6,757 during the period from August 1, 1994, through December 31, 1994, for his engineering consulting work for the City of Chadron, Excel Corporation, and Panhandle Chrysler, and for his service on the Lottery Commission. (Tr. 439.) After subtracting self-employment expenses, his net income for that

same period was $77.55. Dierks' 1995 tax records demonstrate gross income of $18,-342 from his engineering consulting business, and $142 from his manufacturing business. After depreciation, expenses, and other costs, Dierks' consulting business had a net profit of $5,444, and his manufacturing business had a net loss of $3,809. (Tr. 415–416.) [1]

### D. Issues on Appeal

Dierks' maintains that (1) the ALJ incorrectly applied the legal standards for assessing whether his home businesses from August 1, 1994, through December 31, 1994, constituted "substantial gainful activity"; and (2) the ALJ applied an incorrect legal standard when deciding that Dierks was not entitled to a trial work period beginning on January 1, 1995, the month he filed his application for disability benefits.

## II. DISCUSSION

### A. Standard of Review

■ A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992).

> "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir.1993). Therefore, "[w]e do not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir.1994) (citation omitted). Rather, " 'if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision.' " *Oberst*, 2 F.3d at 250

---

1. A more complete summary of the medical evidence is not required because the ALJ decision that is the subject of this appeal was based on nonmedical grounds; rather, it fo-

cused on whether Dierks' activity after his alleged disability-onset date was "substantial gainful activity" such that Dierks could not be classified as disabled.

(quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992)).

*Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir.1997).

■ This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d at 311. Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir.1999); *Boock v. Shalala*, 48 F.3d 348, 351 n. 2 (8th Cir. 1995); *Smith*, 982 F.2d at 311.

**B.  Issue (1):  Substantial Gainful Activity**

■ Pursuant to 42 U.S.C. § 423(a), disability insurance benefit payments are available to individuals who are under a "disability," defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *See also* 20 C.F.R. § 404.1505 (1999) (defining "disability").

"The first step in determining whether a claimant is disabled is to ascertain whether the claimant engaged in substantial gainful employment during a period of claimed disability. If a claimant engages in substantial gainful activity, there can be no finding of disability, even if the claimant does in fact have an impairment." *Andler v. Chater*, 100 F.3d 1389, 1392 (8th Cir. 1996) (citations omitted); 20 C.F.R. § 404.1520(a) ("If you are doing substantial gainful activity, we will determine that you are not disabled."); 20 C.F.R. § 404.1571 (same).[2]

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572. Section 404.1573 of the social security regulations further state how the nature of a claimant's work and the time a claimant spends doing such work are considered in the "substantial gainful activity" analysis.

(a) .... If your duties require use of your experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that you have the ability to work at the substantial gainful activity level.

....

(c) .... Even though the work you are doing takes into account your impairment, such as work done in a sheltered workshop ..., it may still show that you have the necessary skills and ability to work at the substantial gainful activity level.

(d) .... Supervisory, managerial, advisory or other significant personal services that you perform as a self-employed individual may show that you are able to do substantial gainful activity.

(e) .... While the time you spend in work is important, we will not decide

---

2.  Disability determinations are made according to a five-step process described in 20 C.F.R. § 404.1520. *Newton v. Chater*, 92 F.3d 688, 692 (8th Cir.1996). The ALJ's determination in this case stopped at the first step; that is, the only inquiry required was whether

the claimant was working and performing substantial gainful activity during a claimed period of disability, regardless of the claimant's medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b).

whether or not you are doing substantial gainful activity only on that basis. We still evaluate the work to decide whether it is substantial and gainful regardless of whether you spend more time or less time at the job than workers who are not impaired and who are doing similar work as a regular means of their livelihood.

20 C.F.R. § 404.1573.

The regulations also contain several evaluation guidelines for individuals who are self-employed, as is the plaintiff in this case. Section 404.1575(a) states in relevant part:

> (a) .... We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone since the amount of income you actually receive may depend upon a number of different factors like capital investment, profit sharing agreements, etc.... We will evaluate your work activity on the value to the business of your services regardless of whether you receive an immediate income for your services. We consider that you have engaged in substantial gainful activity if—
>
> ....
>
> (2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth [$500 per month] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing ....

20 C.F.R. § 404.1575[3]. Social Security Ruling 83–34 further explains how the "substantial gainful activity" analysis should be applied to self-employed individuals like Plaintiff.

In determining whether a self-employed individual is engaging in SGA, consideration must be given to the individual's activities and their value to his or her business. Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits. An individual's services may help build up capital assets during a period of development when no profits are evident, or they may reduce losses during temporary periods of poor business conditions.... Hence, it is necessary to consider the economic value of the individual's services, regardless of whether an immediate income results from such services.

Social Security Ruling 83–34, 1983–1991 Soc. Sec. Rep. Serv. 106, 1983 WL 31256, at *1 (1983).

In light of the above standards, I conclude the ALJ properly concluded that Dierks' home business activity, beginning at or around his alleged disability-onset date in August 1994, amounted to substantial gainful activity such that Dierks was not under "disability," as defined in 42 U.S.C. § 423(d). Although the evidence shows that Dierks had relatively little net income during 1994 and 1995 after subtracting various self-employment expenses, it is clear that: (1) Dierks' work as a registered professional engineering consultant for the City of Chadron and other private clients, and as the owner of a manufacturing company, required significant mental activities, even though he engaged in such activities on a part-time basis; (2) such work was done for pay or profit, whether or not a profit was actually realized; (3) Dierks' experience, skills, responsibilities, and registration as a professional engineer contributed substantially to

---

**3.** The ALJ did not apply the two other tests laid out in sections 404.1575(a)(1) and (3). The plaintiff does not argue that either of these alternative tests should have been applied, but rather that the ALJ improperly concluded that the test laid out in section 404.1575(a)(2), quoted above, was met.

the operation of his consulting and manufacturing businesses since he was the sole participant in these businesses; and (4) although Dierks received little net income in 1994 and 1995, Dierks' work activity was worth $500 per month *"when considered in terms of its value to the business,"* 20 C.F.R. § 404.1575(a)(2) (emphasis added), especially when considering that (a) the City of Chadron and other private clients were willing to pay Dierks $40.00 per hour for his engineering services (an indication of the value of Dierks' professional services to his business), and (b) Dierks' net income in the first two years of his new businesses is not an accurate representation of the *value* of his services to his business. 20 C.F.R. §§ 404.1572, 404.1573, 404.1575.

Other courts have reached analogous results. *See Johnson v. Sullivan,* 929 F.2d 596 (11th Cir.1991) (affirming termination of benefits pursuant to 20 C.F.R. § 404.1575(a)(2) because claimant found to be engaging in substantial gainful activity as licensed surveyor from home; claimant's experience, license, and mental contribution to business were substantial and enabled the business to continue, even though he was relegated to drawing maps and signing plats made by family members participating in the business; noting that income is less reliable as indicator of "substantial" nature of work when claimant is self-employed; claimant had income of $800 per month); *Rollins v. Shalala,* 19 F.Supp.2d 1100 (C.D.Cal.1994) (affirming denial of benefits for substantial gainful activity when self-employed dentist working two days per week grossed $4,000 per month, indicating significant value of dentist's services, but consistently operated at a loss due to expenses), *aff'd,* 77 F.3d 490, 1996 WL 62687 (9th Cir.1996) (table); *Strahan v. Shalala,* 1994 WL 543029 (S.D.Tex.1994) (affirming Secretary's decision that claimant was engaged in substantial gainful activity when he owned and operated a television transmitter, but operated at loss, when claimant failed to present documentary evidence showing that his services were not worth at least $300 per month; ALJ properly found it was claimant's intent to operate business for profit, even if television station was operating at a loss; "Work may be gainful even if no profit is realized if it is of the kind usually done for pay or profit."); *Barber v. Sullivan,* 765 F.Supp. 58 (W.D.N.Y.1991) (affirming ALJ's alternative finding that home insurance agency in which plaintiff—a licensed insurance agent—worked from four to eight hours per month was substantial gainful activity under 20 C.F.R. § 404.1575(a)(2) when considered in terms of value to business because plaintiff's business depended upon his singular role as business decision-maker). *See, e.g., Petersen v. Chater,* 72 F.3d 675 (8th Cir. 1995) (remanding when ALJ's analysis of 20 C.F.R. § 404.1575(a)(1–3) tests inadequate; noting in footnote that record was also insufficient to show whether plaintiff's activity as self-employed farm manager satisfied the test laid out in section 404.1575(a)(2) because farm manager reported loss on tax return and there was no evidence presented regarding whether a third-party landowner would have paid $500 per month to manage an unprofitable venture).

## C. Issue (2): Temporary Work Period

■ Dierks argues the ALJ erred in not finding him entitled to a temporary work period as of January 1, 1995, the first day of the month in which he filed his application for benefits. Specifically, Dierks asserts the ALJ erred in stating that the Eighth Circuit Court of Appeals has not adopted a rule which allows trial work periods to commence during the period in which a claimant waits for a determination regarding whether he or she is entitled to disability insurance benefits, citing *Newton v. Chater,* 92 F.3d 688 (8th Cir.1996). (Tr. 21.)

A "trial work period" is a period in which a claimant may test his or her ability to work and still be considered "dis-

abled." 20 C.F.R. § 404.1592(a). A trial work period "begins with the month in which you become entitled to disability insurance cash benefits," but such a period cannot begin before the month in which an application for benefits is filed. 20 C.F.R. § 404.1592(e).

*Newton v. Chater* involved a claimant who alleged disability from October 1992 and who worked at a foundry from June to September 1994. In *Newton,* the Eighth Circuit Court of Appeals found that one's entitlement to a trial work period depends upon whether one is "entitled" to disability insurance cash benefits, and that under 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A), such cash benefits are "not conditioned upon receipt of a benefits award, but only upon the passage of five consecutive months of disability lasting twelve continuous months.... [A] trial work period starts in the month that entitlement to disability benefits begins, which is the month following five consecutive months of being under a disability that has lasted or is expected to last a total of twelve continuous months." *Id.* at 694 (citation omitted). Thus, the *Newton* court found that the Commissioner erred in considering the claimant's work from June to September 1994 as evidence of substantial gainful activity without first determining whether the claimant was entitled to a trial work period during that time. *Id.*

Although the ALJ in Dierks' case failed to cite *Newton,* his ruling is consistent with it. Because Dierks became engaged in substantial gainful activity the same month in which he alleged onset of his disability, and he continued to perform such activity up until the date of hearing, there was never a "passage of five consecutive months of disability," a prerequisite to receiving benefits and to a trial work period. *Id.;* 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A). Thus, the ALJ correctly concluded that Dierks was not entitled to a trial work period.

### III. CONCLUSION

The ALJ's decision regarding Dierks' performance of substantial gainful activity from the alleged onset date of his disability and the unavailability of a trial work period must be affirmed. Specifically, because Dierks was engaged in substantial gainful activity since August 1994, the month in which he filed his application for disability benefits, he was not under a "disability," as defined in the Social Security Act. Further, Because Dierks became engaged in substantial gainful activity the same month in which he alleged onset of his disability, and he continued to perform such activity up until the date of hearing, there was never a "passage of five consecutive months of disability," a prerequisite to receiving benefits and to a trial work period. *Newton v. Chater,* 92 F.3d at 694; 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A). Thus, Dierks was not entitled to a trial work period.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that the final decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).